UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LOUIS P. TORTORELLA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action |
| | ) | No. 06-10054 RGS |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

This putative class action was brought by plaintiffs Louis P. Tortorella, Wayne R. Gutierrez, Joseph P. Murphy, and Steven M Littlefield, on behalf of all current or former soldiers and officers in the Massachusetts Army National Guard. Plaintiffs bring suit against the United States of America and several federal officials sued in the official capacities, the Commonwealth of Massachusetts and several state officials sued in their official capacities, and the Massachusetts National Guard. Plaintiffs seek reimbursement for pay and allowances allegedly owed to them pursuant to 32 U.S.C. § 502(f). See First Amended Class Action Complaint ("First Amended Complaint") ¶ 1, at 2.

Plaintiffs have failed to satisfy their threshold burden of establishing that this Court has subject matter jurisdiction over this matter. Neither of the statutes which plaintiffs invoke, 28 U.S.C. §§ 1331 and 1346, vests this Court with jurisdiction. It is well-settled that general jurisdictional statutes such as the federal question statute, 28 U.S.C. § 1331, do not waive the sovereign immunity of the United States. Moreover, plaintiffs have failed to allege that the amount in controversy is less than $10,000, or that each and every plaintiff waives recovery in excess of $10,000, a necessary prerequisite for jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).

Plaintiffs also have failed to exhaust administrative remedies. The Massachusetts National Guard ("MA NG") has initiated a review of the records of all the servicemembers in the MA NG that were mobilized since September 11, 2001, to ensure each person receives the proper entitlements, and any member dissatisfied with a determination by the MA NG can apply to the Army Board for Correction of Military Records ("ABCMR").

Finally, the individually-named federal defendants -- Donald H. Rumsfeld, Secretary of the U.S. Department of Defense; Francis J. Harvey, Secretary of the Army; David M. Walker, U.S. Comptroller General; and Leonard Samborowski, Inspector General of the MA NG[1] -- should be dismissed from this action under Fed. R. Civ. P. 12(b)(2) as they are not proper party defendants.

---

[1] Inspector General Samborowski, in fact, is a member of the United States Army pursuant 1 to Title 10, and therefore is a federal defendant.

## BACKGROUND

Plaintiffs Louis P. Tortorella, Wayne R. Gutierrez, Joseph P. Murphy, and Steven M. Littlefield, instituted this putative class action complaint seeking reimbursement for alleged money that is owed to them from the United States and the Commonwealth of Massachusetts for their service on active duty. See First Amended Complaint ¶ 1, at 2. Plaintiffs allege that they all served on active duty at Camp Edwards, Massachusetts Military Reservation, and contend that they were not provided with the appropriate by the MA NG when they served in Title 32 status, specifically with regard to pay entitlements in addition to their base pay, and plead causes of action based on the alleged breach of 32 U.S.C. § 502(f) (Count One); an alleged breach of 37 U.S.C. § 404 (Count Two); an alleged breach of 37 U.S.C. 411 (Count Three); breach of fiduciary duty (Count Four); breach of contract (Count Five); breach of covenant of good faith and fair dealing (Count Six); damages for non–payment of wages under Massachusetts law (Count Seven); equal protection (Count Eight); a Fifth Amendment Takings claim (Count Nine); and punitive damages (Count Ten).  Id. ¶¶ 44-87, at 10-17. Plaintiffs name as defendants the United States of America; Donald H. Rumsfeld, in his official capacity as Secretary of Defense; Francis J. Harvey, in his official capacity as Secretary of the Army; David M. Walker, in his official capacity as U.S. Comptroller General; the Commonwealth of Massachusetts; Mitt Romney, in his official capacity as Governor of Massachusetts;

Martin J. Benison, in his official capacity as Comptroller of the Commonwealth of Massachusetts; the MA NG; Brigadier General Oliver J. Mason, Jr., in his official capacity as Adjutant General of the MA NG; and Leonard Samborowski, in his official capacity as Inspector General of the MA NG.

## STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of claims for "lack of jurisdiction over the subject matter," and "'[a] motion to dismiss an action under Rule 12(b)(1) * * * raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it.'" United States v. Lahey Clinic Hosp., Inc., 399 F.3d 1, 8 n.6 (1st Cir. 2005) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 61 (3d ed. 2004)). As the First Circuit has explained, "[t]his rule is a large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction," Valentin v. Hospital Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001), including challenges based on the absence of a waiver of sovereign immunity, see id. at 363, and a challenge to a complaint based on the failure to exhaust administrative remedies, see Lahey Clinic, 399 F.3d at 8 n.6 (citing Bonilla v. Muebles J.J.

Alvarez, Inc., 194 F.3d 275 (1st Cir. 1999); Deniz v. Municipality of Guaynabo, 285 F.3d 142 (1st Cir. 2002)).

In cases in which the defendant challenges the accuracy of the jurisdictional facts asserted by the plaintiff, the defendant's challenge "permits (indeed, demands) differential factfinding." Valentin, 254 F.3d at 363. As the Supreme Court has stated, "when a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, the court may inquire by affidavits or otherwise, into the facts as they exist." Land v. Dollar, 330 U.S. 731, 735 n.4 (1947), overruled by implication on other grounds, Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949); accord Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996) (holding that district court may consider matters outside the pleadings to determine its own jurisdiction). In such circumstances, "the plaintiff's jurisdictional averments are entitled to "no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." Valentin, 254 F.3d at 363.

**ARGUMENT**

**I.    PLAINTIFFS HAVE FAILED TO ESTABLISH THE EXISTENCE OF SUBJECT MATTER JURISDICTION**

It is well-established that "'[t]he United States, as a sovereign, is immune from suit save as it consents to be sued * * *, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). As a general rule, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996). Because federal courts are courts of limited jurisdiction, subject matter jurisdiction is never presumed and it is the burden of plaintiffs to demonstrate the existence of federal jurisdiction. See Brittell v. United States, 318 F.3d 70, 72 (1st Cir. 2003); Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). If this Court determines that jurisdiction does not exist it is its duty to proceed no further and dismiss the suit. See Mills v. Maine, 118 F.3d 37, 52 (1st Cir. 1997).

In this case, plaintiffs invoke 28 U.S.C. §§ 1331 and 1346 as a basis for this Court's jurisdiction. See Amended Complaint ¶ 13, at 4. Neither statute assists plaintiffs. It is wellestablished that

"[g]eneral jurisdictional statutes such as 28 U.S.C. § 1331 * * * do not waive sovereign immunity and therefore cannot be the basis for jurisdiction over a civil action against the federal government." Berman v. United States, 264 F.3d 16, 20 (1st Cir. 2001).

To be sure, the federal question statute is oftentimes pled in conjunction with section 702 of the Administrative Procedure Act ("APA"), which provides a waiver of sovereign immunity in certain actions against the United States. See 5 U.S.C. § 702. But plaintiffs cannot rely on the APA as a waiver of sovereign immunity in this case. Not only have the plaintiffs failed to plead the APA as a basis of jurisdiction in their First Amended Complaint, section 702 of the APA only waives the government's sovereign immunity for non-monetary claims. Id.

Nor does 28 U.S.C. § 1346 provide a waiver of sovereign immunity in this case. The only provision that arguably is relevant -- the Little Tucker Act -- grants original jurisdiction to the district courts (concurrent with the United States Court of Federal Claims) and waives sovereign immunity for non-tort claims against the United States "not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon

any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort * * *." 28 U.S.C. § 1346(a)(2) (emphasis added). The Court of Federal Claims, by contrast, has exclusive jurisdiction over non-tort claims against the United States in excess of $10,000 under the Tucker Act. See 28 U.S.C. § 1491(a)(1).

In this case, plaintiffs have not pled with specificity that the amount that each individual plaintiff is seeking is less than $10,000, or that they are waiving recovery in an excess of $10,000.  See, e.g., Loudner v. United States, 108 F.3d 896, 900 (8th Cir. 1997) ("The jurisdiction of the district courts (as distinguished from the United States Court of Federal Claims) under [28 U.S.C. § 1346(a)(2)] is limited to claims not exceeding $10,000, and each of the plaintiffs alleges that his or her individual claim is less than this amount."); Chula Vista City School Dist. v. Bennett, 824 F.2d 1573, 1579 (Fed. Cir. 1987) (holding that "claim of each member of the class must be examined separately to determine whether it meets the jurisdictional requirement" and that, where only 6 members of the 55-member class presented claims which did not exceed the $10,000 limit, "only those six claims were properly before the district court."). Indeed, plaintiffs' First Amended

Complaint fails to identify the amount of money damages that any of the individually-named plaintiffs are seeking against the United States. Under these circumstances, plaintiffs have failed to meet their burden of establishing the existence of subject matter jurisdiction. See, e.g., Leveris v. England, 249 F. Supp.2d 1, 4 (D. Me. 2003) ("Leveris, as plaintiff, must establish subject matter jurisdiction. In the absence of any allegation that his claim is $10,000 or less, thereby bringing him within the Little Tucker Act, he has failed to do so."); Karahalios v. Defense Language Inst. Foreign Language Presidio of Monterey, 534 F. Supp. 1202, 1209 & n.6 (N.D. Cal. 1982) (dismissing action for lack of subject matter jurisdiction without prejudice and stating that, "[i]f plaintiff chooses to amend his complaint, he should indicate the amount of the damages he is requesting, so that we can determine whether this case falls within the jurisdictional amount requirement imposed on us by 28 U.S.C. § 1346.").

Accordingly, plaintiffs' First Amended Complaint should be dismissed for lack of subject matter jurisdiction.

## II.  PLAINTIFFS HAVE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

Even assuming plaintiffs had alleged a proper jurisdictional basis for their claims, this Court nonetheless lacks subject matter

jurisdiction over this suit because plaintiffs have failed to exhaust their administrative remedies.

We begin with the settled principle that the Founding Fathers vested Congress with "plenary control" to promulgate rules relating to the composition and regulation of the Armed Forces. The Constitution gives Congress the authority "[t]o raise and support Armies," "[t]o provide and maintain a Navy," and "[t]o make Rules for the Government and Regulation of the land and naval Forces." U.S. CONST. art. I, § 8, cls. 12-14. The Supreme Court therefore has recognized that "[t]he constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping," United States v. O'Brien, 391 U.S. 367, 377 (1968), and that "judicial deference * * * is at its apogee when legislative action under the congressional authority to raise and support armies and make rules and regulations for their governance is challenged." Rostker v. Goldberg, 453 U.S. 57, 70 (1981).

Based on these first principles, the First Circuit has adopted the four-pronged test established in Mindes v. Seamans, 453 F.2d 197 (5th Cir. 1971), for determining the reviewability of claims arising incident to military service. See Penagaricano v. Llenza, 747 F.2d 55, 60-61 (1st Cir. 1984) Pauls v. Secretary

of Air Force, 457 F.2d 294 (1st Cir.1972). The Mindes court held that courts should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures. See Mindes, 453 F.2d at 201. Thus, "[a]s a general rule, and particularly under Mindes, courts demand that military personnel with grievances against the military establishment or its personnel must exhaust the administrative remedies provided by the military service before seeking relief in civilian courts." Penagaricano at 61.  Only if both of these prerequisites are met may a court proceed to weigh the following four factors: (1) the nature and strength of the Plaintiff's challenge to the military determination; (2) the potential injury to the Plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; (4) the extent to which the exercise of military expertise or discretion is involved. See Mindes, 453 F.2d at 201-02.

      Plaintiffs have failed to exhaust their administrative remedies in this case. Even before this lawsuit was filed, the MA NG initiated a review of the records of all the servicemembers in the MA NG that were mobilized since September 11, 2001, to ensure each person receives the proper entitlements. See

Declaration of Thoams A. Devine ¶¶ 3-4. Any member of the National Guard dissatisfied with a determination made by the MA NG Guard audit can apply to the ABCMR. See Declaration of Carl W. S. Chun ¶¶ 2-3. The ABCMR, composed of civilians appointed by the Secretary of the Army, has statutory authority to "correct any [Army] record" in order to "remove error or injustice." 10 U.S.C. § 1552(a). A decision of the ABCMR is subject to judicial review on an arbitrary and capricious standard. See Chappell v. Wallace, 462 U.S. 296, 299 (1983).

 Strict application of the exhaustion requirement promotes judicial economy. First, questions regarding application of military statutes and regulations "are better addressed by the ABCMR" for "[i]t has far greater experience than this court in deciphering the content and effect of military regulations and should be permitted to exercise its expertise." Navas v. Vales, 752 F.2d 765, 769 (1st Cir. 1985). Second, the military review process produces a record for judicial review, which is particularly beneficial in cases like this that involves factual issues or questions regarding the proper construction and application of military regulations. See Noyd v. Bond, 395 U.S. 683, 696 (1969).  As the Fifth Circuit has explained:

> [W]hether this is viewed as a legal or factual question, the Army ought to be the
> primary authority for the interpretation of its own regulations. A decision by the

>ABCMR that the Army should have followed [the regulation at issue] might completely obviate the need for judicial review. If on the other hand, the ABCMR concludes that [the regulation at issue] is inapplicable to the facts of this case and [the plaintiff serviceman] then seeks judicial review, the court will at least have a definitive interpretation of the regulation and an explication of the relevant facts from the highest administrative body in the Army's own appellate system.

Hodges v. Callaway, 499 F.2d 417, 422 (5th Cir. 1974) (quoted with approval in Navas, 752 F.2d at 770-71).  Third, the military review process may accord the member the relief he seeks, thereby obviating the need for judicial review. See Noyd, 395 U.S. at 696. Finally, requiring a service member to exhaust intramilitary remedies where, as here, a violation of the Constitution has been raised may moot out the member's constitutional claim and thereby "'vindicate the fundamental doctrine that courts should avoid passing on unnecessary constitutional questions.'" Bois v. Marsh, 801 F.2d 462, 468 n.11 (D.C. Cir. 1986) (quoting Sohm v. Fowler, 365 F.2d 915, 918 (D.C. Cir.1966)).

Nor can plaintiffs aver that the ABCMR is incapable of addressing their claims. As noted above, the statute authorizing the military services to create boards of correction of military records expressly provides that the Secretary of the Army, acting through the ABCMR, "may correct any military record of the

Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice," 10 U.S.C. § 1552(a)(1), and this includes claims based on "constitutional, statutory and/or regulatory violation. See 32 C.F.R. § 581.3(c)(5)(v).

Accordingly, plaintiffs' failure to present their claims to the ABCMR renders this case nonjusticiable. See Navas, 752 F.2d at 771 ("[W]e hold that Navas's regulatory claim to be a nonjusticiable military matter as he failed to exhaust his administrative remedies."); Penagaricano, 747 F.2d at 61 ("Penagaricano has failed, however, to exhaust the administrative remedies available to him, which arguably compels a conclusion of nonjusticiability even before we reach the four-part balancing test also mandated by Mindes," although noting that exhaustion may not be required in an action brought under 42 U.S.C. § 1983).[2]

---

[2] We note that, in Darby v. Cisneros, 509 U.S. 137, 154 (1993), the Supreme Court held that courts may not "impose an exhaustion requirement as a rule of judicial administration where the agency order has already become 'final' under § 10(c) [of the APA, 5 U.S.C. § 704]." That holding is no bar to applying the exhaustion component of the Mindes test to assess the justiciability of plaintiffs' claims, both because plaintiffs have not pled a cause of action under the APA, and because application of the exhaustion doctrine serves to avoid premature or unnecessary judicial incursion into legitimate military matters. See, e.g., Chappell, 462 U.S. at 299-301; Saad v. Secretary of the Navy, 846 F. Supp. 889, 891-92 (S.D. Cal. 1994) (Darby rationale inapplicable to suit challenging military personnel decision, which "is a unique context with specialized rules limiting judicial review").

## III. THE INDIVIDUALLY-NAMED FEDERAL DEFENDANTS ARE NOT PROPER PARTY DEFENDANTS

Lastly, the individually-named federal defendants should be dismissed from this action under Fed. R. Civ. P. 12(b)(2) because they are not proper party defendants in a suit seeking money damages. Each of the individually-named federal defendants has been sued only in their official capacities, and it is beyond cavil that an action under Bivens v. Six Unknown Agents, 403 U.S. 388 (1971), can only be brought against federal officers in their individual capacities. See, e.g., Tapia-Tapia v. Potter, 322 F.3d 742, 746 (1st Cir. 2003); Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000). Thus, "[t]he absence of any 'individual capacity' defendant sounds the death knell for any purported Bivens claim." Tapia-Tapia, 322 F.3d at 746.

## CONCLUSION

For the foregoing reasons, plaintiffs' First Amended Class Action Complaint should be dismissed for lack of subject matter jurisdiction, and the individually-named federal defendants should be dismissed as they are not proper party defendants.

    Respectfully Submitted,

    COMMONWEALTH OF
    MASSACHUSETTS
    By its Attorneys,
    /s/ Jean M. Kelley
    _____

Jean M. Kelley, BBO #265540
Assistant Attorney General
Government Bureau/Trial Division
One Ashburton Place, Room 1813
Boston, MA  02108
(617) 727-2200 x 3327

March 24, 2006